ADAMS, J.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID M. CLAPPER, | ) | CASE NO. 5:09CV0569 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| CLARK DEVELOPMENT INC., et al., | ) | AND ORDER |
| | ) | [RESOLVING DOCS. 86 and 88] |
| Defendants. | ) | |

This mortgage foreclosure action based on diversity jurisdiction is before the Court upon the Motion for Summary Judgment of defendant The Huntington National Bank ("Huntington") (Doc. 86), filed on September 18, 2009. The Court has reviewed the memorandum in support, memorandum in opposition of plaintiff David M. Clapper ("Clapper") (Doc. 97),[1] and reply memorandum (Doc. 106).

This action is also before the Court upon Clapper's Motion for Partial Summary Judgment Against Huntington and defendant Randi Marion ("Marion") (Doc. 88), filed on September 18, 2009. The Court has reviewed the memorandum in support, Huntington's memorandum in opposition (Doc. 96), and reply memorandum (Doc. 107).

These motions address a dispute as to the priority of liens or encumbrances between the plaintiff and Huntington. The motions were filed in response to an Order (Doc. 77) that provides

---

[1]No other party, including defendant Clark Development, Inc. ("CDI"), has opposed the motion.

in pertinent part that "[a] party shall serve and file its Motion for Summary Judgment ("the motion") *on the issue of priority* on or before September 18, 2009" (emphasis added). *Id.* at 2.[2]

Huntington is the successor by merger to Unizan Bank, N.A. ("Unizan") and United Bank, N.A. ("United"). It moves the Court for partial summary judgment on its Crossclaim (Doc. 23). Huntington requests that its liens be declared the first and best liens on the property to the full extent of the $1,312,135.90 plus attorney's fees, interest, and costs owed to it. For the reasons that follow, the Court finds that Huntington is entitled to lien priority as against Clapper.[3]

**I.**

CDI[4] took title from Clark[5] to a master parcel totaling 3 acres and, thereafter, borrowed money from Huntington that CDI used to build townhouse condominium units. The subject property is situated at 696 Jarvis Road, Green, Ohio, and is known as Greystone Estates Condominium Development. It is described as:

> Being a fractional part of Section 5;
> Parcel Nos. 28-15028, 28-15029, 28-15030, 28-15031, 28-15032, 28-15034, 28-15035, 28-15039, 28-15040, 28-15041, 28-15044, & 28-01109;
> City of Green;

---

[2] Plaintiff's Motion for Partial Summary Judgment Against Defendants Mikar, Ltd. ("Mikar") and CDI (Doc. 84) and the Motion for Summary Judgment of defendants' CDI, Mikar, All About Children's Learning & Play Center-Cleveland Ave., Inc. ("All About"), and Karen Clark ("Clark") (Doc. 85) do not concern the issue of priority. Therefore, the Court will not address either motion at this time.

[3] The Court announced the within decision at the Telephone Conference held on the record on November 17, 2009. *See* Order (Doc. 129) at 1.

[4] On December 4, 2009, an involuntary petition for relief in a case under Title 11 of the United States Code (the "Bankruptcy Code") was filed against CDI in the United States Bankruptcy Court for the Northern District of Ohio, being Case No. 09-55561. *See* Notice (Doc. 137). A bankruptcy stay, however, is not currently in effect in these proceedings.

[5] *See* Doc. 86-1 at 7-8.

2

      County of Summit; and
      State of Ohio.

The subject property represents 10 existing condominium units, as well as excess site for eight additional units within the Greystone Estates Condominium Development off of Jarvis Road.

Beginning in 2001, Huntington and its predecessors, Unizan and United, loaned money to CDI on an ongoing basis for development of the condominium units on the property. Among other loans, Huntington made a $2.4 million loan to CDI on March 21, 2005. CDI executed a $2.4 million Note (Doc. 86-1 at 9-11) to evidence this loan. Therefore, CDI promised, among other things, to make monthly payments on or before the date such payments were due.

On March 21, 2005, CDI also executed an "Open-End Mortgage" in the amount of $2.4 million in favor of Unizan (Doc. 96-5), which was duly recorded in the Summit County Fiscal Office three days later. This mortgage, Record Number 55166091, describes the property as follows:

> SITUATED IN THE CITY OF GREEN, COUNTY OF SUMMIT, AND STATE OF OHIO AND BOUNDED AND DESCRIBED AS FOLLOWS:
>
> AND KNOWN AS BEING A FRACTIONAL PART OF SECTION 5 OF SAID TOWNSHIP AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE NORTH LINE OF SAID SECTION 5, WHICH POINT IS NORTH 86 DEGREES 24 MINUTES WEST, A DISTANCE OF 280 FEET ON THE SECTION LINE.
>
> THENCE SOUTH 5 DEGREES 21 MINUTES WEST, A DISTANCE OF 466.85 FEET;
>
> THENCE SOUTH 86 DEGREES 24 MINUTES EAST, A DISTANCE OF 280 FEET;
>
> THENCE NORTH 5 DEGREES 21 MINUTES EAST, A DISTANCE OF 466.85 FEET ON THE GENERAL APPARENT LINE OF LAND NOW OR FORMERLY OWNED BY VALENTINE BARBARA MUNCH SCHAFFER TO THE PLACE OF BEGINNING CONTAINING 3 ACRES.

      28-01109  GR-00005-01-014.000

Doc. 96-5 at 9.[6]

      On April 14, 2005, CDI recorded in the Summit County Fiscal Office a Declaration of Condominium Ownership for Greystone Estates Condominiums ("Condominium Declaration") (Doc. 86-1 at 54-136), which is Record Number 55173509. Page 55 of the 84-page Condominium Declaration entitled "Consent of Mortgage" expressly refers to Unizan as "mortgagee of the premises described on **Exhibit A** [Legal Description of Property Submitted to Declaration] and **Exhibit B** [Additional Property for Future Expansion]." *Id.* at 107.[7] Record Number 55166091 is one of 10 mortgages listed. *Id.*

      On December 13, 2005, CDI executed an "Open-End Second Mortgage" in the maximum amount of $300,000 (exclusive of interest and advances) in favor of Clapper (Doc. 86-2), which was duly recorded in the Summit County Fiscal Office on December 20, 2005. This mortgage, Record Number 55271104, describes the property as follows:

> Land situated in the City of Green, County of Summit and State of Ohio and known as being:
>
> Unit Numbers 1,2,3,4,5,11,12, 20,21 and 22 in Greystone Estates Condominium as shown in the Declaration and Bylaws set forth in Instrument 55173509 of Summit county Records.

---

[6]CDI also executed four prior Mortgages and an Assignment of Rents in favor of Unizan, United, and Huntington, which were never discharged. *See* Declaration of David Wechter (Doc. 86-1) at ¶ 8. Each of these Mortgages secures the "Indebtedness," a term defined to include renewals or extensions of the mortgage debt. Furthermore, three of them contain a "cross-collateralization" provision, which states that the Mortgage secures all present and future amounts owed to Huntington.

[7]The property was, and is, located in Fractional Section 5. The Fractional Section referenced in the property description of the Condominium Declaration is incorrect. The correct Fractional Section is "5", not "6". Declaration of Carolyn E. Curry (Doc. 96-1) at ¶¶ 5 and 8. Likewise, Phase I for the Condominium Declaration (page 81) correctly describes the property as part of Fractional Section 5.

*Id.* at 6. CDI only granted Clapper a Second Mortgage on a portion of the master parcel totaling 3 acres. The mortgage expressly states that it "is subordinate to the Mortgage dated 12-13-05 by the mortgagor to Unizan Bank National Association recorded March 24, 2005 as Document No. 55166091 in the office of the Summit County, Ohio Auditor (the "senior mortgage")."[8] *Id.* at 1. Moreover, the property description references the Condominium Declaration set forth in Instrument 55173509 of the Summit County Fiscal Office records, which expressly refers to Huntington's Mortgages.

On October 16, 2008, the plaintiff filed an action against CDI, Mikar,[9] Unizan, Huntington, United, All About, Terrell Quincy, Marion, and Clark. The case was subsequently dismissed without prejudice. *Clapper v. Clark Development Inc.*, Case No. 5:08CV2452, slip op. (N.D. Ohio April 1, 2009).

On March 16, 2009, the plaintiff refiled his lawsuit. The Complaint (Doc. 1) was accompanied by evidence of record title to the property (Preliminary Judicial Reports), prepared by Chicago Title Insurance Company, based upon an independent examination and/or search of public records (Doc. 1-13). *See* Sixth Amended General Order No. 2006-16 at Section 1.2.1. The Reports show the Mortgages in favor of Unizan and United, Huntington's predecessors, as senior to the plaintiff's "Open-End Second Mortgage" on the property. This includes all of the condominium units in which the plaintiff claims a lien. *See* Doc. 96-1.

---

[8] It is undisputed, however, that Unizan's $2.4 million Mortgage is dated "3-21-05," not "12-13-05."

[9] On November 20, 2009, an involuntary petition for relief in a case under the Bankruptcy Code was filed against Mikar in the United States Bankruptcy Court for the Northern District of Ohio, being Case No. 09-55338. *See* Notice (Doc. 132).

On April 17, 2009, Huntington filed a Crossclaim against CDI (Doc. 23). Eight days earlier, Huntington had obtained a cognovit note judgment against CDI, Clark, and Melvin Clark "in the amount of $1,312,135.90 as of April 3, 2009, plus court costs, attorneys fees, and advancements, and interest thereafter at the per diem rate of $287.15 per day." *Huntington National Bank v. Clark Development Inc.*, Case No. CV-2009-04-2807 (Summit Cty., Ohio C. P. April 9, 2009). *See* Doc. 86-1 at 52-53.

Pursuant to the Order Appointing a Receiver (Doc. 26-1), entered on April 20, 2009, the Court granted the Receiver a lien (senior to all liens with the exception of unpaid real property taxes and assessments) on the Greystone Property to secure payment of allowed compensation to the Receiver and Counsel to the Receiver. *Id.* at 6-7.

On July 23, 2009, the Court entered a Stipulated Order Approving Receiver's Application to Procure Loan From Huntington (Doc. 62).[10] Pursuant to this Order, Huntington made a loan of $104,508.22 to the receivership estate to pay the delinquent and current property taxes, which was secured by a lien on the Greystone Property. The Order provides in pertinent part:

> . . . The Huntington Tax Mortgage shall be a first and best lien as against the Huntington Tax Mortgaged Parcels but only up to and in those specific amounts per parcel as set forth in Exhibit A . . ., plus any unpaid accrued interest owed in proportion to each parcel pursuant to the Tax Loan. The Huntington Tax Mortgage shall be senior per parcel to any and all encumbrances and/or mortgages of record against the Huntington Tax Mortgaged Parcels, including without limitation, the Plaintiff's encumbrance as alleged in the Complaint and the pre-existing mortgage lien in favor of Huntington (as successor to Unizan Bank National Association), but subject and subordinate in all respects to any

---

[10]The Order is deemed to be effective as of July 16, 2009. *Id.* at 3.

> future real estate or property taxes, but limited in proportion to those specific amounts outstanding per parcel as set forth in Exhibit A.

*Id.* at 2-3.

## II. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriately granted when

> . . . the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). *See also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).

The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. Under Fed. R. Civ. P. 56(e)(2),

> . . . an opposing party may not rely merely on allegations or denials in its own pleading; rather, it's response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.

The non-moving party must, in order to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing the motion for summary judgment, the Court must view

the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine" the Court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. ANALYSIS

The Court finds that the premises described in Huntington's "Open-End Mortgage" is the same property described by Clapper's "Open-End Second Mortgage." Plaintiff's argument that his Second Mortgage somehow enjoys priority because of perceived deficiencies in the legal descriptions contained in Huntington's Mortgages lacks merit. The Court also finds that Huntington's "Open-End Mortgage," which contains the same description of the property as the deed by which CDI obtained title from Clark, adequately describes the property subject to its lien. *See In Re Bunn*, 578 F.3d 487 (6th Cir. 2009) (recorded mortgage that contained the street

address of residential property, but not the legal description of the parcel of land, was sufficient under Ohio law to give constructive notice of the mortgage to third parties).

The Court finds that Huntington is the owner and holder of the $2.4 million Note (Doc. 86-1 at 9-11) and that the sums due under the Note were accelerated in accordance with the terms of the Note and "Open-End Mortgage" in the amount of $2.4 million (Doc. 96-5). The Court also finds that Huntington obtained a cognovit note judgment against CDI on the Note "in the amount of $1,312,135.90 as of April 3, 2009, plus court costs, attorneys fees, and advancements, and interest thereafter at the per diem rate of $287.15 per day." *See* Doc. 86-1 at 52-53. Furthermore, the Court finds that CDI executed and delivered the Mortgage, that Huntington is the owner and holder of the Mortgage and that the Mortgage secures the amounts due under the Note and cognovit note judgment.

The Court finds that the $2.4 million Note and "Open-End Mortgage" in the amount of $2.4 million are in default because payments required to be made to Huntington under the Note and Mortgage have not been made. The Court also finds that the conditions of the Mortgage have broken and the break is absolute.

The Court finds that Huntington's "Open-End Mortgage" in the amount of $2.4 million was duly recorded in the Summit County Fiscal Office and is a valid and subsisting first mortgage on the property. The Court also finds that the parties to the Mortgage intended that it attach to the entire fee simple interest in the property.

Ohio Rev. Code § 5301.23(A) embodies the principle of "first in time, first in right." Section 5301.23 sets forth the general rule that the first mortgage that is presented and recorded has preference over a subsequently presented and recorded mortgage. The priority of a mortgage

9

is determined by reviewing the recording chronology. *Washington Mut. Bank, FA v. Aultman*, 172 Ohio App.3d 584, 589 (2007). Huntington's "Open-End Mortgage" predates Clapper's "Open-End Second Mortgage" by almost nine months.[11]

The Court finds that the plaintiff expressly subordinated his Second Mortgage to Huntington's "Open-End Mortgage." *See Riley v. Rice*, 40 Ohio St. 441 (1884) (held that even a defective mortgage is entitled to priority when it is expressly referenced in a subsequent mortgage); *Riegel*, 119 Ohio St. 369, paragraph one of the syllabus ("When the granting clause in a mortgage makes the conveyance subject to a prior unrecorded mortgage, the grantee acquires only an equity of redemption, and his estate can only be enlarged by the payment or discharge of the prior mortgage."). Clapper does not explain how the language of his own Mortgage should not estop him from disputing the priority of Huntington's Mortgages. The plaintiff's Mortgage expressly states that it "is subordinate to the Mortgage dated 12-13-05 by the mortgagor to Unizan Bank National Association recorded March 24, 2005 as Document No. 55166091 in the office of the Summit County, Ohio Auditor (the "senior mortgage")." *Id.* at 1. Moreover, the property description references the Condominium Declaration set forth in Instrument 55173509 of the Summit County Fiscal Office records, which expressly refers to Huntington's Mortgages.

Huntington's "Open-End Mortgage," however, is junior in priority under Ohio law to the lien held by the Summit County Fiscal Officer to secure the payment of real estate taxes and assessments under Ohio Rev. Code § 323.47. Furthermore, the Court finds that Huntington's

---

[11] In addition, CDI executed multiple prior Mortgages in favor of Huntington. *See* n. 6, *supra*. Absent evidence that these Mortgages have been released or satisfied, Ohio law presumes that these Mortgages continue in effect. *Riegel v. Belt*, 119 Ohio St. 369 (1928), paragraph three of the syllabus; *see also TransOhio Sav. Bank F.S.B. v. Patterson*, 69 Ohio App.3d 471, 473 (1990).

"Open-End Mortgage" is also junior in priority to the Huntington Tax Mortgage and the Receiver's lien to secure payment of allowed compensation to the Receiver and Counsel to the Receiver.

## IV. CONCLUSION

Based upon the foregoing, Huntington's Motion for Summary Judgment (Doc. 86) is GRANTED on the issue of priority and Clapper's Motion for Partial Summary Judgment Against Huntington and Marion (Doc. 88) is DENIED on the issue of priority on the grounds that there is no genuine issue as to any material fact and Huntington is entitled to a judgment as a matter of law that it possesses the first priority lien on the property that is the subject of this foreclosure action, including the condominium units described in Clapper's "Open-End Second Mortgage."

The Clerk of this Court shall send a copy of the within Memorandum of Opinion and Order by regular mail to Terrell Quincy, #A560882, Mansfield Correctional Institution, P. O. Box 788, 1150 North Main Street, Mansfield, Ohio 44901.

IT IS SO ORDERED.

| | |
|---|---|
| December 28, 2009 | /s/ John R. Adams |
| Date | John R. Adams |
| | U.S. District Judge |