UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| DAVID M. CLAPPER, | ) | CASE NO. 5:09 CV 00569 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | <u>ORDER</u> |
| CLARK DEVELOPMENT, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Joint Amended Motion to Show Cause filed by Defendant Huntington National Bank and Receiver James Myers. Doc. 399; *see also* Docs. 359 and 370.  The movants request that this Court hold David Bruno in contempt of this Court's orders for knowingly and intentionally interfering with the Receiver's ability to fulfill his obligations and duties as assigned by this Court.  In support of the motion to show cause, the movants incorporate by reference the Receiver's Special Report filed on May 23, 2012 (Doc. 355).  Mr. Bruno objected to the motion to show cause. The Court held a motion hearing on September 16 and 17, 2013.

I.     Law

This Court has the authority to hold a non-party in contempt for knowingly violating its Orders.  "It is well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it." *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 507 (8th Cir. 2000)); *see also ClearOne Communs., Inc. v.*

*Bowers*, 651 F.3d 1200, 1215–16 (10th Cir. 2011).  Fed. R. Civ. Pro. 71 grants district courts the power to enforce orders against "a person who is not a party ... as if a party."  It states, "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." *Id*. As the Sixth Circuit has held, "because a civil contempt ruling either attempts to coerce compliance or compensate the complainant for losses, it is fully appropriate to impose judicial sanctions on the nonparty corporate officer [who fails to take action or attempt compliance]." *Electrical Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Service Co.*, 340 F.3d 373, 383 (6th Cir. 2003).

The Sixth Circuit has set forth the procedure for analyzing whether a district court may hold a nonparty in contempt:

> An analysis of whether a district court has authority to hold nonparties in contempt for violating its injunction must begin with Federal Rule of Civil Procedure 65(d)(2). The Rule provides three categories of persons that an injunction may bind. The first, of course, is the parties themselves. Fed. R. Civ. P. 65(d)(2)(A). The second is the parties' officers, agents, servants, employees, and attorneys. Fed. R. Civ. P. 65(d)(2)(B). The third is "persons who are in active concert or participation" with a party or its officers, agents, servants, employees, or attorneys. Fed. R. Civ. P. 65(d)(2)(C). The party seeking contempt sanctions bears the threshold burden of placing its target within one of these categories. Moreover, where a party seeks to hold nonparties in civil contempt, it must also show that the nonparties are "aware of the injunction and know that their acts violate the injunction." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 154 F.3d 1345, 1353 (Fed. Cir. 1998) (citing *Waffenschmidt v. MacKay,* 763 F.2d 711 (5th Cir. 1985)). Taking these rules together, a party seeking contempt sanctions against a nonparty must prove that the nonparty knew of the injunction and knowingly aided and abetted an enjoined party or its agents to violate the injunction. This showing must be made by clear and convincing evidence. *Elec. Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co.,* 340 F.3d 373, 379 (6th Cir. 2003).

*M & C Corp. v. Erwin Behr GmbH & Co., KG,* 508 Fed.Appx. 498, 502 (6th Cir. 2012). Moreover, a federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *American Trust v.*

*Sabino*, 230 F.3d 1357, *1 (6th Cir. 2000) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991); *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1995)).

This Court must, therefore, determine: 1) whether David Bruno falls into one of the categories of persons contemplated under Fed. R. Civ. Pro. 65; 2) whether David Bruno was aware of the Court's Orders; and 3) whether David Bruno intentionally violated the Court's Orders.

II.    Analysis

    1.  <u>The Court's orders at issue were binding upon David Bruno as an officer or agent of Clark Development, Inc</u>.

Section 11 of the Order Appointing a Receiver, dated April 20, 2009 (Doc. 26-1), provides as follows (emphasis in original):

> **Injunction of CDI.** CDI and all officers, directors, managers, members, attorneys, accountant, agents, employees, management companies, independent contractors, or any other persons or entities acting in concert or participating with CDI, and all those who are under CDI's direction or control, are hereby enjoined and directed (A) to fully and completely cooperate with the Receiver….

Section 16 of the same order provides as follows (emphasis in original):

> **Penalties for Interference.** Any entity, person or individual who willfully interferes with the authority of the Receiver as set forth in this Order or any subsequent order of the Court shall be subject to all appropriate penalties provided for under the laws of the State of Ohio and the United States, and any such conduct may be punishable as a contempt of Court.

Section 9 of the Order Terminating Service of Receiver Effective February 17, 2010; Order Appointing Successor Receiver (Doc. 159) provides as follows (emphasis in original):

> **Penalties for Interference.** Any entity, person or individual who willfully interferes with the authority of the Receiver as set forth in the April 20, 2009 Order Appointing a Receiver, this Order, or any subsequent order of the Court shall be subject to all appropriate penalties provided for under the laws of the

State of Ohio and the United States, and any such conduct may be punishable as a contempt of Court.

Mr. Bruno was the President of The Greystone Estates Condominium Association (the "Association"). Mr. Bruno is also an officer of CDI and is, in any event, specifically subject to the aforementioned provisions. The evidence in the record identifies Mr. Bruno as the "Vice President for Real Estate Activities, Interim Treasurer" of Clark Development, Inc. Accordingly, Mr. Bruno is an officer of a party bound by the Court's Order, and is likewise bound. Fed. R. Civ. P. 65(d)(2)(B).

    2. <u>Mr. Bruno had knowledge of the Court's Injunctive Order and Orders Appointing the Receiver of Clark Development, Inc.</u>

The record before the Court demonstrates by clear and convincing evidence that Mr. Bruno was aware of the Court's Orders. For example, from at least as early as May 29, 2009, Mr. Bruno was in contact with David Hunter, the original receiver in this case, and counsel for Defendant Huntington. See Doc. 355 beginning at page 10. Mr. Bruno has had continued involvement in the litigation, both as an officer of Clark Development, Inc., and in a non-party capacity as the President of the Association over which the Court appointed the Receiver. In fact, at no point has Mr. Bruno claimed that he was unaware of the Court's Orders. Instead, Mr. Bruno's full defense against movants' show cause motion lies within the third step in this analysis.

    3. <u>Mr. Bruno knowingly and intentionally interfered with the Court's Orders.</u>

The Court incorporates by reference the facts contained in the Receiver's Special Report at Doc. 355. Significantly, Mr. Bruno does not dispute these facts either in writing or in his oral testimony and arguments during the show cause hearing. Mr. Bruno instead appears to argue that his actions were not made with the intent to interfere. The Court finds Mr. Bruno's argument

disingenuous. Mr. Bruno's involvement in this litigation, through his influences over the various defendant corporations, over his son who was named the executor of the estate of Defendant Karen Clark, and over the Association has undoubtedly caused delay at every step in this process.

The Court finds that the movants have demonstrated by clear and convincing evidence that Mr. Bruno knowingly and intentionally interfered with the Receiver's ability to carry out his duties assigned by this Court.  See Receiver's Special Report, Doc. 355. In addition to the facts set forth in the Receiver's Special Report, this Court heard testimony from Mr. James Myers, the second appointed receiver, and Mr. Stephen Dodd, counsel for Mr. Myers.

The evidence demonstrates that Mr. Bruno engaged in a constant stream of unproductive communications, interference, and threats of litigation throughout the course of the Receiver's tenure.  The movants further demonstrated that Mr. Bruno directly interfered with the sale of several of the units of the Association through improper bankruptcy filings and through direct communication with the purchasers of the units (Rucker, Filipovich, and Bambeck sales).

In his defense, Mr. Bruno appears to make several arguments. Initially, from the Court's review, none of them appear remotely relevant to the Court's analysis of whether he should be found in contempt. Mr. Bruno appears to contend that the appointment order was ambiguous.  As the Court's order made clear, the receiver had the same rights as Clark Development, Inc. Accordingly, there is no basis for Mr. Bruno, an officer of Clark Development, Inc., to assert that he was unaware of the scope of those rights.

From the Court's review, Mr. Bruno does not seem to make a legal argument to negate the Court's finding that he directly and intentionally interfered with the receiver's duties.

Throughout the pending litigation, the Court warned Mr. Bruno on several occasions that his interference with the receiver's duties could be grounds for contempt.  Mr. Bruno's own statements express his intent to delay these proceedings and to encourage others to do the same; such as having his son vote on the ten Clark Development, Inc. units during an Association meeting in clear violation of the receiver's right to do so.  The Court finds that Mr. Bruno actions as set forth in the Special Report and during the show cause hearing were willful, deliberate, intentional and in direct defiance of court order.

4. <u>Penalty for Contempt</u>

Defendant Huntington Bank asks this Court to order Mr. Bruno to reimburse the receivership estate and Defendant Huntington in the amount of $158,607 plus attorney's fees and costs relating to prosecuting the contempt motion against Mr. Bruno.  Mr. Myers and Mr. Dodd presented invoices outlining the time spent dealing with Mr. Bruno's interference amounting to $158,607 and seek leave to file post-hearing briefs on the attorney's fees and costs for prosecuting the contempt motion.

Mr. Bruno argues that any fine should be limited to conduct that occurred after the October, 2011 hearing on a previously filed motion to show cause against Mr. Bruno. At the conclusion of the hearing, the parties entered into a stipulated order, and the movants agreed to withdraw their show cause motion against Bruno at that time. The first contempt motion filed on October 13, 2011 related to only one e-mail from Mr. Bruno, and also specifically notes at paragraph 6 that the filing is not intended to be a comprehensive filing relating to the fact pattern that had already been partially presented to the Court by that date and for which the movants were beginning to uncover. The second motion to show cause was filed after the receiver had the

opportunity to file a Special Report outlining each of Mr. Bruno's acts showing that he had intentionally interfered with the receivership estate. The Court finds no basis, and Mr. Bruno provides none, to limit the penalty for acts taken after the October 2011 hearing.

The Court recognizes that the requested amount of $158,607 is a high assessment against an individual. Mr. Bruno's constant interference was, however, substantial and constant during the pendency of this litigation. The movants set forth substantial documentation both showing the level of Bruno's intentional interference for the requested amount and Mr. Bruno did not object to the amount of hours or hourly rates presented. $158,607 reflects the costs the receivership estate incurred as a result of Mr. Bruno's interference.[1]

III.  Conclusion

The Joint Amended Motion to Show Cause is GRANTED (Doc. 399), and this Court finds David Bruno in contempt of court for violating Court Orders. Mr. Bruno is ORDERED to reimburse the receivership estate in the amount of $111,820 ($23,260 receiver's fees and $88,560 receiver's counsel's fees) and Defendant Huntington Bank in the amount of $46,787. The movants request for attorney's fees and costs for prosecuting the motion to show cause is denied. The Court finds that the initial award is sufficient as punishment for Mr. Bruno's contempt.

IT IS SO ORDERED.

  April 15, 2014                             s/ Judge John R. Adams
  Date                                       JUDGE JOHN R. ADAMS
                                             UNITED STATES DISTRICT COURT

---

[1] This amount does not include the value of the lost sales or diminished sales value attributable to Mr. Bruno's interference.