THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| David M. Clapper, | ) | CASE NO.: 5:09CV569 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Clark Development, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is a determination of whether Attorney Brent English is in contempt of Court and whether any sanction should flow from his conduct. English was given notice of the allegations against him in the Court's show cause order of October 22, 2015. English was then given an opportunity to defend against those accusations in a hearing on October 29, 2015.

**I. Factual Background**

    **A.**     **Procedural History**

This case has a long and tortured history spanning over six years. On April 15, 2014, the Court found David Bruno in contempt for violating Court orders. Bruno was ordered to reimburse the receivership estate in the amount of $111,820 and Defendant Huntington Bank in the amount of $46,787. Doc. 458. Bruno filed an appeal, along with nine other post-judgment motions. As a result, the Court restricted Bruno from filing further motions, pro se, in this matter and was ordered to pursue relief through his appeal.

Doc. 480. The Sixth Circuit later affirmed this Court's decision. *Clapper v. Clark Development, Inc., et al.,* Nos. 14-3500/3770 (6th Cir. Apr. 29, 2015).

Huntington Bank sought a debtor's examination of Bruno in pursuit of collection on their judgment. Bruno was ordered to appear in February 18, 2015 at the courthouse to submit to the examination. On February 17, just one day before the exam, Attorney English entered a limited appearance and filed a motion to continue the examination. The Court denied the late-filed motion.

Bruno appeared for the debtor's exam but did not submit all documents requested, and Huntington then filed a motion to show cause. Doc. 494. The show-cause motion was granted on September 15 and a hearing was set for October 21, 2015. Doc. 509. The Court also granted Huntington's motion to reconvene the debtor's exam, setting the examination to take place immediately following the show-cause hearing.

### B. Refusal to Comply with Court Orders

Five weeks after the contempt hearing and the examination were ordered by the Court, English filed a motion to continue on Saturday, October 17, 2015 (just two business days before the scheduled hearings). Doc. 514. In his motion, English asserted that Bruno had medical procedures scheduled in New York that would require him to miss the hearing. English also asserted that "undersigned legal counsel must be present at a civil jury trial that is scheduled to commence on Monday, [October] 19, 2015." Huntington filed an opposition, arguing the late filing, the pattern of continuances sought, and the fact that English created the scheduling conflict when he filed his Notice of Appearance <u>after filing his motion to continue in this matter</u>.

The Court agreed with Huntington and denied the continuance. Despite having two days' notice that the matter was not continued, Attorney English did not appear at the scheduled hearing. Doc. 518. He did not call the Court or opposing counsel to alert them of his absence. He simply failed to appear, leaving his client to appear alone at the hearing.

Consequently, the Court could not proceed with the hearing or the debtor's exam and issued a show-cause order to English for his refusal to comply with the court order to appear. Doc. 518. The Court set the hearing for October 29, 2015, and again, English filed a motion to continue the hearing on October 26, just three days before it was scheduled to begin. Doc. 520. The Court denied the motion and convened the hearing on the morning of October 29. That same morning, at 8:12 a.m., English filed a Motion to Withdraw as Counsel, alleging that Bruno had discharged him. Doc. 530. However, from English's own testimony, he admitted to discussing and advising Bruno as to documents to produce to Huntington before the next day's hearing. English's Motion to Withdraw as Counsel was denied.

Once again, English did not appear. However, his personal counsel appeared on his behalf and acknowledged: 1) that English had received the Court's order requiring his appearance, and 2) that the attorney had explained the order to English and confirmed that English understood the consequences for refusing to comply. This Court issued a warrant and English appeared on the afternoon of October 29, 2015, delivered to the Court by the U.S. Marshal Service. At that time, English and his counsel were permitted to defend against the allegations of contempt.

3

English testified with the benefit of counsel during the hearing. In his testimony, English reiterated much of what he had placed in writing before this Court. English testified that he was contacted by Attorney Orville Stifel to assist him in a trial in Cuyahoga County. English noted that Stifel informed him that the trial would commence during the final week of October. Based upon this information, English claims that he cleared any conflicts he had that week and accepted the work. English then contends that he learned on October 17 that trial would commence on October 19, rather than his anticipated date of October 26.

English next admitted that he responded to this information by seeking a continuance from this Court. In so doing, he did not contact opposing counsel to inform them of his alleged predicament. As a result, opposing counsel for Huntington Bank opposed the motion. In its opposition, Huntington highlighted that English entered his notice of appearance *after* filing his motion to continue in this matter. Huntington also noted that there appeared to be numerous other counsel representing the defendants in the state court matter. While skeptical of the docket's information regarding counsel, the Court found that the late nature of the request to continue and the timing of English's notice of appearance in the state matter were sufficient to deny the motion.

English's motion to continue was denied on October 19, 2015. Thereafter, he still did not contact opposing counsel, nor did he contact the Court in any manner. Instead, English attended the trial proceedings in Cuyahoga County without even the courtesy of informing anyone in this matter that he would not attend the proceedings within this case. English also admitted that he did not seek a continuance of the state court trial. For that

4

matter, English admitted that he did not even inform the state court judge of his initial scheduling conflict and the proceeding before this Court.

English's rationale for not approaching the state court judge to request a continuance is less than compelling. English testified that because he was new to the matter, he did not believe it was "his place" to seek such a continuance. However, if English's testimony is to be accepted, his need to appear resulted from the medical emergency of another lawyer that had intended to try the case with Stifel. In addition, Stifel could certainly have confirmed that he gave English the wrong trial date when the two first met. Those two facts coupled together certainly create a compelling argument for granting English a continuance.

Moreover, as the trial was later recessed for an entire day to facilitate the schedule of the visiting, presiding judge, it can hardly be said that a one-day continuance would have unduly inconvenienced the parties in that litigation. Furthermore, as the presiding judge of that matter was a retired visiting judge, it can hardly be said that such a one-day continuance would have interfered with his docket. As such, English's failure to even request a continuance of his later-accepted state court work was wholly unjustified.

### C. Failure to Obey Court Orders and Refusal to Answer Questions

English's testimony before this Court was troubling in numerous other aspects. For example, English was asked:

> Q. Now, undoubtedly you heard Judge Adams recite in the record today that you did not enter a formal appearance in that case until sometime around mid-October. Is that accurate?
>
> A. No. It's not accurate. Let me tell you what I did.

5

English then went on to explain the first telephone call he received from Stifel on October 11.  In so answering, English ignored the essence of the question he was asked – namely, whether the Court accurately noted the date of his appearance of counsel of record.  English's insistence on discussing a tangential issue is reminiscent of conduct that resulted in contempt in state court in 2008, where the Eighth District Court of Appeals stated:

> He repeatedly argued with the court, characterizing (and often mischaracterizing) the court's rulings in dramatic, argumentative fashion. These arguments repeatedly challenged the court's authority and effectively halted the proceedings. Appellant also refused to address issues the court attempted to raise, choosing instead to go off on his own tangent, and again effectively interfering with the proceedings.

*In re Contempt of English*, 2008 WL 2834082, at *5 (July 24, 2008).

Consistent with the Court of Appeals, in this case, English's refusal to answer the question directly is troubling because of the simplicity of the question and the answer.  The Court previously placed on the record the state court docket (Doc. 527-1.).  That docket demonstrates beyond all dispute that English did not enter his appearance in the state court matter until October 18, 2015.  Prior to that date, English owed no obligation to that state court.  His lengthy discussion of accepting to perform work through conversations with Stifel did not obligate him to appear.  It was only his formal notice of appearance that created the scheduling conflict. Moreover, his refusal to simply respond "Yes, that is accurate." to the posed question is indicative of his unwillingness to accept any responsibility for his failure to obey a court order.

### D. English's Misleading and Evasive Testimony

English also swore under oath that he had never been ordered to show cause before in his professional career and had never been disciplined in any manner.  On

6

examination by Huntington Bank, however, English admitted that he had been previously found in contempt. English stated "Oh, you know, that's right. There was a matter where a municipal judge held me in contempt as a result of me telling him that he was incorrect about a fact." English then denied that the matter involved criminal contempt. A review of the appellate decision in that matter serves several purposes. First, it demonstrates that the matter was indeed criminal contempt. Second, the appellate decision demonstrates that the contempt finding resulted from far more egregious conduct than English admitted to under oath.

### E. <u>Disrespect to the Court</u>

English's unrepentant tone is also concerning to the Court. Rather than appear with a conciliatory tone or an apologetic one, English remained defiant and combative during his testimony. When asked how the Court should react to him not showing up for a hearing and not giving notice that he would not appear, English responded. "Well, Your Honor, with all due respect what I think a Court should do is recognize that a lawyer who is trying a jury case cannot be also in another court." English later continued, "I didn't think it was my place to say because I had to go to federal court, despite me filing a timely motion that explained what had happened, that I could request a continuance in good faith."

The record makes it clear that English believes that this Court should have simply deferred to his judgment on which matter was more important. His assertions that there were numerous other lawyers and jurors involved in the state court matter only bolster the view that English felt that matter was more important.

7

Of course, it is also a reasonable interpretation of the facts to conclude that the state court matter was more lucrative financially for English. English admitted under oath that he had received an initial payment in that matter on October 13. If English had informed Stifel that he could not enter a formal appearance because of his conflict in this matter, it is entirely possible that the client would have demanded a return of those funds, and certainly English would have lost the fees earned over the two week trial. As such, a plausible interpretation of the facts suggests that English valued his new client over his representation of Bruno for financial reasons.

**II. Legal Standard**

> 18 U.S.C. § 401 provides in pertinent part:
>
> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; ...
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Contumacious misbehavior punishable under § 401(1) must be willful, and must actually obstruct the district judge in the performance of judicial duties. *United States v. Thoreen*, 653 F.2d 1332 (9th Cir.1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982). Under § 401(3), a party may be found in contempt for disobeying an order "only if the order is clear and definite, and the contemnor has knowledge of it." *Id*. at 1339, citing *United States v. Baker*, 641 F.2d 1311 (9th Cir.1981).

8

**III. Analysis**

Generally, to prevail on a motion for contempt, a party must "produce clear and convincing evidence that shows that '[the opposing party] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Electrical Workers Pension Trust Fund of Local Union # 58 v. Gary's Electric Service Co.*, 340 F.3d 373, 379 (6th Cir.2003) (quoting *N.L.R.B. v.. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir.1987)). If the moving party establishes a prima facie case, the burden shifts to the opposing party to prove inability to comply with the court's order. *Electrical Workers*, 340 F.3d at 379. The opposing party must "show categorically and in detail why he or she is unable to comply with the court's order." *Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). Unless the opposing party demonstrates that he took "all reasonable steps within [his] power to comply with the court's order, the Court should hold him in contempt." *Electrical Workers*, 340 F.3d at 379 (quoting *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir.1989)).

In the instant matter, this Court finds that English fell woefully short of taking of all the reasonable steps within his power to comply with the Court's order that he appear. First, English failed to notify opposing counsel in this matter to reach a mutually agreeable resolution of his scheduling predicament. Second, English failed to even apprise the state court of his existing conflict, let alone seek relief from the state court in any manner. This latter fact is particularly alarming for several reasons. For one, English admitted under oath that he left *during* voir dire in the trial because he had a state court appellate argument in another case that he had been unable to reschedule. As such, it is

apparent that the state court judge was, at a minimum, aware that English could conceivably have other scheduling conflicts. Moreover, given that English left during the voir dire, it strongly suggests that his co-counsel was able to function, even if at a lower level than desired.

Returning to English's shortcomings, the Court must also note that following the denial of his motion to continue, English made no further effort of any kind. He did not approach the state court judge to seek relief. He did not contact opposing counsel to discuss his predicament. He did not even grant the parties or the Court the courtesy of a call to inform them that he would not be in attendance. Instead, he allowed counsel to prepare for a debtor's examination that English knew or should have known could not be conducted in his absence.

Rather than take *all* of the reasonable steps to comply with this Court's order, English took one – he sought a continuance. When English did not receive the relief he desired, he simply buried his head to his responsibilities to his client herein, opposing counsel herein, and the Court. As a result, English has wholly failed to demonstrate that he could not comply with the Court's order. Rather, English has only shown that he knowingly and intentionally chose not to comply.

This finding is bolstered by the fact that English chose this same path when the Court scheduled his show cause hearing. Once again, rather than immediately seeking relief from the state court, English sought to alter the date of the show cause hearing and even went so far as to attempt to withdraw as counsel. Nothing in the history of this matter would have suggested that such an approach would be successful. When his

10

motions were denied, English once again knowingly and intentionally disobeyed the Court's command that he appear.

Accordingly, the Court finds that the evidence overwhelmingly supports a finding that English should be held in contempt. As such, English is hereby found in contempt of Court.

### IV. Penalty for Contempt

#### A. Cost and Inconvenience for Counsel

When evaluating what penalty should flow from English's contempt, the Court has examined several factors. First, the Court has examined the cost and inconvenience visited upon opposing counsel by English's conduct. Counsel for Huntington Bank appeared before the Court as ordered on October 21, 2015. At the time, counsel indicated that the court reporter was present and that counsel wanted to proceed with the show cause hearing related to Bruno and the debtor's examination. Neither hearing could move forward without English present as counsel. Counsel for Huntington Bank once again appeared on October 29, 2015 to proceed with the hearing against English and continue the remaining hearings. Once again, English did not appear until brought into Court by the U.S. Marshals at 3:00 p.m.

#### B. Pattern of Last-Minute Continuances

In addition, the Court would note that it was English who filed a last-minute motion to continue Bruno's debtor examination in February of this year. One day before the hearing was scheduled to commence, English entered a limited appearance for the purpose of seeking to continue the hearing on Bruno's behalf. Similar to the last-minute request herein, that request was made four weeks after the hearing had been scheduled by

11

the Court. Thereafter, Bruno appeared without counsel for the examination. The examination, however, was fruitless due to Bruno's failure to provide required documents.

### C. Failure to Acknowledge Misconduct

Furthermore, the Court has previously noted that English did not strike a conciliatory or apologetic tone during his show cause hearing, instead maintaining a view that he had done nothing improper. In that vein, the Court would note that English described his prior contempt finding as a disagreement over a fact with a municipal court judge. The state court of appeals that affirmed the criminal contempt finding quoted the trial court's finding as follows:

> Throughout the course of the proceedings involving the Jury Trial of the *City of Brooklyn v. Matthew T. Frank* (Case No. 07 TRC 1304), the Court has been forced to repeatedly discourage Attorney Brent English from engaging in pointing, shouting, jumping, stomping his feet and otherwise disrespectful conduct. Despite several cautionary warnings from this Court, the contemnor, Brent L. English, continued to engage[] in disrespectful and disruptive behavior.

*In re Contempt of English,* 2008 WL 2834082, at *4 (July 24, 2008). Similar to his conduct in *Frank*, while perhaps not as theatrical, English did not heed the Court's multiple written warnings that he needed to attend the scheduled hearings. When confronted with his failures, English seemed to take the view that this Court should have known that his trial matter was simply more important. In addition, he shouted at the Court while testifying at the underlying Contempt hearing and was generally disrespectful.

Based upon the above, the Court finds that an appropriate penalty for English's contempt is a monetary sanction to make Huntington Bank whole again, coupled with a

fine to act as a deterrent for future misconduct by English. As such, English shall pay the attorney fees and any costs accrued by Huntington Bank for the hearings on October 21, 2015 and October 29, 2015. In addition, English shall pay a fine of $500. Huntington Bank must file an affidavit and bill of costs and fees within seven (7) days of this Order.

    IT IS SO ORDERED.


<u>November 17, 2015</u>                          <u>*/s/ Judge John R. Adams*_____</u>
                                                  JUDGE JOHN R. ADAMS
                                                  UNITED STATES DISTRICT COURT